IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL CASE NO. 1:18-cv-00347-MR

| | |
|---|---|
| KADEEM WILLIAMS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | **MEMORANDUM OF** |
| vs. ) | **DECISION AND ORDER** |
| ) | |
| MORGAN KIZER, et al., ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

**THIS MATTER** is before the Court on the Defendants' Motion for Summary Judgment [Doc. 46].

**I.    BACKGROUND**

The incarcerated Plaintiff Kadeem Williams ("Williams" or simply, "the Plaintiff"), proceeding *pro se*, filed this action pursuant to 42 U.S.C. § 1983 addressing various incidents that allegedly occurred at the Marion Correctional Institution.[1] The Complaint passed initial review on the Plaintiff's excessive force claims against: Morgan Kizer, a correctional housing unit manager at Marion C.I.; and Rodney Kinser, a correctional

---

[1] The Plaintiff is currently incarcerated at the Eastern Correctional Institution.

sergeant at Marion C.I.[2] [Doc. 1: Complaint; Doc. 9: Initial Review of Complaint].

In his Complaint, the Plaintiff alleges that the Defendants used excessive force against him during an encounter on July 8, 2018. Specifically, the Plaintiff alleges that Unit Manager Kizer "threw [him] to the ground." [Doc. 1: Complaint at 4]. The Plaintiff further alleges that Sergeant Kinser, who weighs more than 200 pounds, placed his right knee on the Plaintiff's face, leaned his body weight onto the Plaintiff's face, and placed his fingers on pressure points on the Plaintiff's face. [Id.]. The Plaintiff further alleges that Unit Manager Kizer and Sergeant Kinser refused to allow a nurse to take the Plaintiff's vitals after the incident. [Id.].[3]

The Defendants move for summary judgment with respect to all the Plaintiff's claims. [Doc. 46: Defendants' MSJ]. The Court notified the Plaintiff of the opportunity to respond to Defendants' Motion and to present evidence in opposition pursuant to Fed. R. Civ. P. 56. [Doc. 50]. The Plaintiff, however, did not respond. Having been fully briefed, this matter is ripe for disposition.

---

[2] This case was assigned to Judge Frank D. Whitney at that time.

[3] Plaintiff's Complaint was neither verified nor signed under penalty of perjury. [Doc. 1].

## II. STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. Id.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. Rather, the nonmoving party must oppose a proper summary judgment motion with citation to

3

"depositions, documents, electronically stored information, affidavits or declarations, stipulations ..., admissions, interrogatory answers, or other materials" in the record. See id.; Fed. R. Civ. P. 56(c)(1)(a). Courts "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Eastern Shore Mkt. Inc. v. J.D. Assoc.'s, LLP, 213 F.3d 174, 180 (4th Cir. 2000). The nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; accord Sylvia Dev. Corp. v. Calvert County, Md., 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" Ricci v. DeStefano, 557 U.S. 557, 586 (2009) (quoting Matsushita v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

## III. FACTUAL BACKGROUND

The forecast of evidence before the Court, taken in the light most favorable to the Plaintiff, shows the following.

4

On July 8, 2018, Unit Manager Kizer was assigned to upper E-Unit where the Plaintiff was on Self-Injurious Prevention observation. [Doc. 48-1: Kizer Affid. at ¶ 8]. At approximately 5:45 p.m., the Plaintiff began smearing feces in the cell and covered the observation camera. [Doc. 48-1: Kizer Affid. at ¶ 8]. At 6:19 p.m., the Plaintiff submitted to restraints and was escorted to the shower to decontaminate. [Doc. 48-1: Kizer Affid. at ¶ 8]. At approximately 6:39 p.m., Unit Manager Kizer and Sergeant Kinser escorted the Plaintiff back to the observation cell. [Doc. 48-1: Kizer Affid. at ¶ 9; Doc. 48-2: Kinser Affid. at ¶ 8]. As the officers began entering the cell, the Plaintiff pushed back against Unit Manger Kizer, who immediately used a bent-wrist technique with his left hand on the Plaintiff's left hand and escorted him to the bunk. [Doc. 48-1: Kizer Affid. at ¶ 9]. Unit Manager Kizer then placed the Plaintiff flat against the bunk while maintaining control of the Plaintiff's left arm. [Doc. 48-1: Kizer Affid. at ¶ 9]. Unit Manager Kizer and Sergeant Kinser began to transition the Plaintiff to full restraints in the front. [Doc. 48-1: Kizer Affid. at ¶ 10]. The Plaintiff was using vulgar language and made statements such as: "I want you to kill me. Go ahead I want you to kill me." [Doc. 48-1: Kizer Affid. at ¶ 10].

As Unit Manager Kizer was giving the Plaintiff an order to stop cursing, the Plaintiff began to resist by attempting to pull away and by making fists

and pulling his arms into a flexed position so as to prevent Kizer and Kinser from applying restraints. [Doc. 48-1: Kizer Affid. at ¶ 10]. The Plaintiff head-butted Sergeant Kinser, striking the back of Kinser's head. [Doc. 48-1: Kizer Affid. at ¶ 11, 15; Doc. 48-2: Kinser Affid. at ¶ 8]. Sergeant Kinser placed his left hand on the Plaintiff's right shoulder, and he and Unit Manager Kizer placed the Plaintiff on the floor to regain control over him while Kinzer continued holding the Plaintiff's left restraint and left arm. [Doc. 48-1: Kizer Affid. at ¶ 11; Doc. 48-2: Kinser Affid. at ¶ 9]. Unit Manager Kizer continued giving the Plaintiff orders to stop resisting which the Plaintiff ignored. [Doc. 48-1: Kizer Affid. at ¶ 11].

Captain Eric Wilson[4] then called a "code 4," requesting additional staff to assist. [Doc. 48-1: Kizer Affid. at ¶ 11; Doc. 48-3: Guzman Affid. at ¶ 18]. Officers Eric Patton and Kasey Radford[5] responded to the code 4. [Doc. 48-3: Guzman Affid. at ¶18]. Officer Patton used a shield to pin the Plaintiff to the floor. [Doc. 48-3: Guzman Affid. at ¶ 18]. Officer Radford then entered the cell and assisted in restraining the Plaintiff with a waist chain and black box. [Doc. 48-3: Guzman Affid. at ¶ 18]. As soon as the Plaintiff stopped

---

[4] Captain Wilson is not a Defendant in this action.

[5] Officers Patton and Radford are not Defendants in this action.

6

resisting and the correctional objectives of control and staff safety were satisfied, all force ceased. [Doc. 48-1: Kizer Affid. at ¶ 11, 20]; [Doc. 48-2: Kinser Affid. at ¶ 9]. Once the Plaintiff was in full restraints, he was helped to his feet and placed against his bunk. [Doc. 48-3: Guzman Affid. at ¶ 18]. All staff then exited the cell without further incident. [Doc. 48-3: Guzman Affid. at ¶ 18]; [Doc. 48-1: Kizer Affid. at ¶ 11; Doc. 48-2: Kinser Affid. at ¶ 10]. The Plaintiff remained in the cell in full restraints due to his disruptive behavior. [Doc. 48-3: Guzman Affid. at ¶ 18].

Neither Unit Manager Kizer nor Sergeant Kinser placed a knee on, or applied pressure point holds to, the Plaintiff's face. [Doc. 48-1: Kizer Affid. at ¶ 13-14; Doc. 48-2: Kinser Affid. at ¶ 12-13]. While Sergeant Kinser placed his hand on the Plaintiff's shoulder as they placed the Plaintiff on the floor, and Kinser placed his knee on the Plaintiff's shoulder to control him until he stopped resisting [Doc. 48-1: Kizer Affid. at ¶ 16; Doc. 48-2: Kinser Affid. at ¶ 15], all of the force that Unit Manager Kizer and Sergeant Kinser applied was in direct response to the Plaintiff's actions and was to maintain control over the Plaintiff and to prevent staff assault [Doc. 48-1: Kizer Affid. at ¶ 17-20; Doc. 48-2: Kinser Affid. at ¶ 14, 16]. The amount of force that Unit Manager Kizer and Sergeant Kinser used was the minimal amount of force necessary to achieve the correctional objectives. [Doc. 48-1: Kizer Affid. at

¶ 20; Doc. 48-2: Kinser Affid. at ¶ 16]. Unit Manager Kizer and Sergeant Kinser did not apply force on the Plaintiff for the purpose of causing him harm or pain, and only applied as much force as they believed necessary to accomplish the correctional objective. [Doc. 48-1: Kizer Affid. at ¶ 21; Doc. 48-2: Kinser Affid. at ¶ 17]. Unit Manager Kizer and Sergeant Kinser's use of force during the incident complied with the Department's Use of Force Policy. [Doc. 48-1: Kizer Affid. at ¶¶ 23-24; Doc. 48-2: Kinser Affid. at ¶ 19-20].

The Defendants have submitted video files containing prison video surveillance footage of the incidents at issue. The footage shows the following events:

| | |
|---|---|
| 6:37:08 | Plaintiff enters the cell, handcuffed behind his back, with leg shackles, escorted by two officers; Plaintiff turns around towards the officers |
| 6:37:11 | Plaintiff is taken towards the bunk and is leaned over it |
| 6:37:30 | Officers stand the Plaintiff up |
| 6:37:34 | A third officer enters the cell |
| 6:38:03 | Waist chain is removed |
| 6:38:38 | Handcuffs are unlocked but remain fastened to Plaintiff's left wrist |

8

| | | |
|---|---|---|
| 6:39:04 | Handcuff is refastened to Plaintiff's right wrist in the front |
| 6:39:20 | Plaintiff visibly flexes his arms |
| 6:39:31 | Plaintiff butts his head forward into an officer's head |
| 6:39:33 | Officers take the Plaintiff to the cell floor |
| 6:39:35 | One officer places a knee on Plaintiff's back; two other officers have hands on the Plaintiff |
| 6:40:53 | A fourth officer enters the cell with a shield and secures the Plaintiff to the cell floor |
| 6:41:37 | A fifth officer enters the cell and applies a waist chain |
| 6:42:51 | Plaintiff begins shifting on the floor, flexing his arms |
| 6:44:22 | Plaintiff is moved to a seated position near the bunk |
| 6:44:21 | Officers begin exiting the cell |
| 6:44:51 | Plaintiff is leaned over the bunk, restrained by the shield |
| 6:45:08 | The last officer, holding the shield, exits the cell |
| 6:45:10 | The cell door is secured |
| 6:45:20 | Plaintiff turns toward the camera and appears calm and unharmed |

[Doc. 51: Defendants' Video Exhibit].

At 7:00 p.m., Melanie Setzer,[6] a registered nurse, was summoned to conduct a post use of force medical assessment; however, the Plaintiff refused the assessment. [Doc. 48-6: Guzman Affid. Ex at 39; Doc. 48-3: Guzman Affid. at ¶ 29; Doc. 48-1: Kizer Affid. at ¶ 12; Doc. 48-2: Kinser Affid. at ¶ 11]. The Plaintiff did not appear to be in distress. [Doc. 48-6: Guzman Affid. Ex at 39; Doc. 48-3: Guzman Affid. at ¶ 29].

Braden Guzman,[7] a correctional lieutenant at Marion C.I., investigated the incident by taking witness statements and reviewing video footage. [Doc. 48-3: Guzman Affid. at ¶ 13, 19]. Lieutenant Guzman concluded that all correctional staff, including Unit Manager Kizer and Sergeant Kinser, carried out their duties in accordance with the Use of Force Policy and that the amount of force used was reasonably applied to achieve a legitimate correctional objective, *i.e.*, to ensure the Plaintiff's compliance with orders and to mitigate any risk of assault on staff. [Doc. 48-3: Guzman Affid. at ¶ 21, 25, 28].

## IV. DISCUSSION

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments," U.S. Const. Amend. VIII, and protects prisoners from the

---

[6] Nurse Setzer is not a Defendant in this action.

[7] Lieutenant Guzman is not a Defendant in this action.

"unnecessary and wanton infliction of pain," Whitley v. Albers, 475 U.S. 312, 319 (1986).  To establish an Eighth Amendment claim, an inmate must satisfy both an objective component – that the harm inflicted was sufficiently serious – and a subjective component – that the prison official acted with a sufficiently culpable state of mind.  Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996).

This subjective standard requires proof of malicious or sadistic action by a prison official in order to make out an excessive force claim.  This is because prison "[o]fficials are entitled to use appropriate force to quell prison disturbances."  Williams, 77 F.3d at 761.  "Because officials must act 'in haste, under pressure, and frequently without the luxury of a second chance,' deliberate indifference is not a sufficiently rigorous standard."  Id. (citing Whitley, 475 U.S. at 320.  "Rather, in these circumstances, in order to make out an Eighth Amendment claim, a prisoner must demonstrate that officials applied force maliciously and sadistically for the very purpose of causing harm."  Id. (internal quotations and citation omitted).

Here, the Plaintiff contends that the Defendants violated his rights under the Eighth Amendment by using excessive force against him.  The forecast of the evidence before the Court, however, leaves no genuine issue of material fact for trial on this issue.  The Plaintiff's refusal to follow orders

and his physical resistance to the officers escorting him, resisting the officers attempting to restrain him, and head-butting an officer, warranted the Defendants' use of force to control the Plaintiff and prevent him from assaulting staff. Furthermore, the Plaintiff refused a medical evaluation after the incident and he did not appear to be in distress. The Plaintiff has submitted no forecast of evidence that the force the officers used was not objectively reasonable, that either of the Defendants subjectively applied force with the requisite state of mind, or that he sustained any injury whatsoever. In sum, the undisputed forecast of evidence before the Court shows that Defendants Kizer and Kinser acted reasonably under the circumstances and exercised only the minimal amount of force necessary to restore order and discipline and prevent the Plaintiff from assaulting staff. See Williams, 77 F.3d at 761. Further, Defendants Kizer and Kinser deny that they acted for the purpose of causing the Plaintiff harm or pain, which the Plaintiff does not attempt to refute.

The Defendants also argue that they are entitled to qualified immunity. "Qualified immunity protects officers who commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful." Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011) (*en banc*). "To determine whether an officer is entitled to qualified immunity, the

court must examine (1) whether the plaintiff has demonstrated that the officer violated a constitutional right and (2) whether that right was clearly established at the time of the alleged violation." E.W. ex rel. T.W. v. Dolgos, 884 F.3d 172, 178 (4th Cir. 2018) (internal quotation marks omitted). The doctrine of qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments and protects all but the plainly incompetent or those who knowingly violate the law." Smith v. Ray, 781 F.3d 95, 100 (4th Cir. 2015) (internal quotation marks omitted). Here, because Plaintiff has not presented a forecast of evidence that Defendants Kizer and Kinser violated a constitutional right, the Defendants are entitled to qualified immunity on Plaintiff's individual capacity claims.

For all these reasons, the Court will grant Defendants' Motion for Summary Judgment.

## ORDER

**IT IS, THEREFORE, ORDERED** that the Defendants' Motion for Summary Judgment [Doc. 46] is **GRANTED**, and this action is **DISMISSED WITH PREJUDICE**.

The Clerk is respectfully directed to terminate this action.

**IT IS SO ORDERED.**

Signed: April 14, 2021

*Martin Reidinger*
Chief United States District Judge